**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALICIA P. HENDERSON,

      Plaintiff,

vs.                                       CASE NO. 3:04-cv-1081-J-HTS

JO ANNE B. BARNHART,
Commissioner of
Social Security,

      Defendant.

## **OPINION AND ORDER**[1]

This cause is before the Court seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. Administrative remedies have been exhausted and the case is properly before the Court.

Alicia P. Henderson filed her applications for benefits on September 21, 2001. Transcript of Administrative Record of Proceedings (Tr.) at 15, 97, 99, 341. Plaintiff alleged a disability onset date of February 14, 1998. *Id.* at 97. Inability to work is based on "diabet[es,] arthritis[, a] mental disorder[, and] back problems[.]" *Id.* at 195 (capitalization omitted). After

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference – Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #8).

the applications were denied initially and on reconsideration, Administrative Law Judge James R. Russell (ALJ) conducted a hearing on January 28, 2004.  At the hearing, testimony was given by Plaintiff, whose non-attorney representative was present.  Dee Dee LoCascio, a vocational expert, also testified.  In a Decision dated April 14, 2004, the ALJ found Ms. Henderson not disabled. *Id.* at 15, 24, 26. The Appeals Council concluded no basis for review existed and the Commissioner's decision became final.

### I.  Background: Alicia P. Henderson's Declarations

On the date of the hearing, Plaintiff was thirty-three years old and lived alone in an apartment.  She had graduated from high school and attended two years of college.  However, she had not earned a college degree.  Previously, Claimant worked as a salesperson, cashier, mail handler, security officer, and tutor.  Ms. Henderson was in a motor vehicle accident in 1998 and thereafter was unable to keep a job.

Plaintiff has trouble grasping with her right hand, which makes it difficult for her to write.  Medications for depression and anxiety are prescribed by her family doctor.  She also takes medicine for asthma, acid reflux, and pain.  Claimant believes her biggest problem in terms of ability to work is that she cannot "deal with . . . society." *Id*. at 327.  Ms. Henderson has trouble interacting with others and being in crowds upsets her.  She often gets angry and is depressed.

Plaintiff is able to keep her home clean and sometimes cooks for herself. She does her own grocery shopping, though at times a neighbor goes for her. A friend lends Claimant a car and she is able to drive. At other times, she rides the bus. Generally, Ms. Henderson stays in her apartment watching television and sleeping and, occasionally, reading the Bible. She takes out the trash, checks the mail, and walks to the grocery store. When Plaintiff goes to the store, she spends about an hour there.

Claimant does not sleep well at night, usually staying up until the early hours of the morning. After a couple of hours she wakes, sometimes takes a bath, and sleeps about four more hours. She has a friend with whom she likes to visit.

## II.  **Standard of Review**

"Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2]

---

[2] The process involves five questions posed until a finding of disability is either precluded or mandated. The questions are as follows: (1) Is the claimant engaged in substantial gainful activity?; (2) If not, does the claimant suffer from a severe impairment?; (3) If yes, does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?; (4) If not, can the claimant perform his or her former work?; (5)

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. § 405(g). "[F]actual findings are conclusive if . . . supported by 'substantial evidence,'" but the application of legal principles is examined "with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)); *see also Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993) ("[N]o presumption of validity attaches to the . . . determination of the proper legal standards to be applied in evaluating claims.").

Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'If the Commissioner's decision is supported by substantial evidence, [the reviewing court] must affirm, even if the proof preponderates against it.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240 n.8); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). In determining whether substantial evidence supports a finding, portions of the transcript are not viewed in isolation, but are examined for their impact upon "the record as a whole." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). However, the existence of substantial

---

If not, can he or she engage in other work of the sort found in the national economy?  20 C.F.R. §§ 404.1520(a)-(g); 416.920 (a)-(g); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Summary of Argument

Plaintiff makes one argument in support of her complaint. That is, the ALJ "failed to adequately explain why he disregarded evidence, namely the result of a Wechsler Memory Index test that, if accepted, would direct a finding [that she was] disabled." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #7; Memorandum) at 1; *see also id.* at 5-7.

### IV.  Analysis

In Claimant's view, the ALJ gave only an inadequate general statement to support his "decision to disregard the Working Memory test" and "fail[ed] to point to any evidence that would cast doubt on the test administered by Dr. [Philip R.] Yates or evidence that would question the validity of the test.  Without such evidence and without a more detailed explanation," the ALJ could not permissibly disregard the score.  *Id.* at 6.

Examining physicians who only see the claimant on one occasion are not treating physicians, *see Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986); thus, examining physicians' opinions are not entitled to deference.  *See McSwain v. Bowen,* 814 F.2d 617, 619

-5-

(11th Cir. 1987) (per curiam). However, the ALJ is required to consider every medical opinion that is in evidence. 20 C.F.R. §§ 404.1527(d); 416.927(d). Furthermore, while the ALJ "need not discuss all of the evidence in the record[,]" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001), "[]he must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (citation and internal quotation marks omitted).

The record indicates Dr. Yates saw Ms. Henderson on only one occasion; therefore, he is an examining physician. *See McSwain*, 814 F.2d at 619. Plaintiff concedes "the ultimate conclusions of Dr. Yates regarding Ms. Henderson's ability to work [were addressed] with a detailed explanation[.]" Memorandum at 7. The rationale given is apparently not disputed. Nevertheless, Claimant maintains the Decision includes "no reason other than the very generic one . . . to reject the results of the Working Memory test administered by Dr. Yates." *Id.* On the contrary, the section of the Decision to which Plaintiff refers contains the ALJ's explanation for his determination that the entire report submitted by Dr. Yates, which included the memory score, should be given little weight. *See* Tr. at 20.

The ALJ's Decision clearly discusses the memory test at issue. It was noted "Dr. Yates administered subtests of the Wechsler Adult Intelligence Scale - Third Edition . . . to the claimant. From

these subtest results, Dr. Yates calculated that the claimant had a Working Memory Index of 53, which [he] said placed the claimant's memory in the moderately retarded range of mental abilities." *Id.* at 19. However, the ALJ gave Dr. Yates's report "little weight . . . in reaching a conclusion on the issue of disability in th[e] case." *Id.* at 20. He explained:

> [T]he findings presented by this non[-]treating physician are minimal and based largely on the claimant's self-report. The . . . claimant's report was exaggerated as compared to the rest of the evidence of record. For the first time in the medical evidence, the claimant reports being "crushed" in the [motor vehicle accident] and she reported that she had hit her head, even though in previous evaluations she indicated that she was unable to remember whether or not she hit her head. The claimant reported again that she was hearing voices and she also said she was seeing spirits. The . . . claimant's self-report to Dr. Yates was embellished, at a minimum, as compared to the evidence of record as a whole. Moreover, . . . this was a one-time visit and overall . . . is inconsistent with the evidence of record when considered in its entirety.

*Id.* It was for these reasons the ALJ did not give much weight to the report from this doctor. *See id.* His assessment necessarily took into account all information contained in the report, including the discussion of Plaintiff's memory.

Consistent with the ALJ's observation, most of the evaluation at issue was based on self-report from Plaintiff. *See id.* at 309-13. Review of the record reveals Ms. Henderson previously reported the motor vehicle accident occurred "when she was driving her car with the seat belt on, and was rear-ended by a truck." *Id.* at 223. As noted by the ALJ, Plaintiff, prior to the examination by Dr.

-7-

Yates, did not describe herself in terms of having been "crushed" in the accident.  Additionally, she reported "[s]he [did] not recall hitting her head." *Id.*

Claimant told Dr. Lauren Lucas, an examining psychologist, in May of 2002 that she had been hearing voices for the past month. *Id.* at 252.  At the evaluation with Dr. Yates less than two years later, she seemed to indicate this had been happening for at least three years.  *See id.* at 311.  The 2004 appointment was the first time in the record that she mentioned seeing spirits.  *See id.* at 311-12.  Based on the foregoing, the ALJ's finding that Ms Henderson's reports to Dr. Yates were embellished when compared to the rest of the record is supported by substantial evidence.[3]

As well, there is no other evidence in the record that Plaintiff's memory is so poor that it should be classified in the moderately mentally retarded range, as Dr. Yates suggested.  *See id.* at 312.  In fact, a neurological examination of Ms. Henderson indicated her "[s]hort-term and long-term memory [were] intact." *Id.* at 225.  Dr. Lucas observed she "appear[ed] to have difficulty

---

[3] Apparent exaggerations by Plaintiff regarding her condition may be discerned, in part, in the text of the report at issue.  For example, Ms. Henderson told the doctor she stuttered, but "to that moment in the conversation (15 minutes after [they had] begun [to] talk), she had not stuttered, yet did develop a stutter that immediately vanished after she had claimed the problem with her stuttering." *Id.* at 311.  Similarly, though Plaintiff expressed to Dr. Yates "that she [could not] eat, that voices [told] her not to eat," *id.*, she represented to the ALJ she cooked for herself and went out to eat. *Id*. at 330.

-8-

holding new information[,]" but could remember "seven digits in immediate recall[.]" *Id.* at 252.[4]

Other evidence in the record supports the judge's decision to give little weight to the report. One physician who examined Plaintiff suggested "there [was] a strong component of malingering on [her] part[.]" *Id.* at 226. Even Dr. Yates questioned whether she was unable or simply unwilling "to function adequately[] with reference to memory skills for the most simple of daily affairs." *Id.* at 312. Indeed, Ms. Henderson's own testimony does not support such drastic deficiencies. She stated she actually performed routine daily activities like cleaning her home, operating a motor vehicle or taking public transportation, watching television and reading, visiting a friend, cooking, going out to eat, and grocery shopping. *Id.* at 330-33.

Plaintiff asserts a letter from one of her employers, which the ALJ failed to discuss, supports her position. Memorandum at 6. The document at issue states:

> Alicia Henderson will be returning to [the packaging department because s]he failed her probationary period in Bulk Manufacturing. She was absent 2 ½ days in the past two weeks. This is unacceptable attendance. In addition, it should be noted that [she] has difficulty in staying focus[]ed on work assignments. She partially finishes what is assigned to her and forgets/leaves the rest undone.

---

[4] Plaintiff may have exaggerated her symptoms at this examination as well. It is noted Claimant represented to Dr. Lucas she did not watch television or read, *id.*, but at the hearing stated she took part in both activities. *See id.* at 333.

Tr. at 114.  Though it indicates Claimant has difficulty staying on task at work, this statement does not clearly support Dr. Yates's findings regarding the severity of her difficulties with memory.  She continued to be employed and was merely assigned to a different department.  The letter certainly does not show Ms. Henderson's memory was as poor as Dr. Yates believed.  The Court, having considered the record in its entirety, concludes the ALJ's decision to give little weight to the report from Dr. Yates, including the Working Memory Index score, was supported by substantial evidence.

In accordance with the foregoing,

**IT IS ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) **AFFIRMING** the Commissioner's decision, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of May, 2005.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

All counsel of record
    and *pro se* parties, if any